UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                      No. 21-CR-00591 MV

GEORGE SKEET,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant George Skeet's Motion to Compel Discovery. Doc. 19. The government filed a response in opposition [Doc. 22] and Mr. Skeet filed a reply. Doc. 24. Having considered the briefs, exhibit, relevant law, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

On April 23, 2021, the government filed a two-count indictment charging Mr. Skeet with one count of Sale and Offer for Sale of Any Migratory Bird, in violation of 16 U.S.C. §§ 703, 707(b)(2), and one count of a Class A Misdemeanor under the Bald and Golden Eagle Protection Act, in violation of 16 U.S.C. § 668(a). Doc. 1. Mr. Skeet allegedly, knowingly and without permission, sold and offered to sell red-tailed hawk feathers, golden eagle feathers, and bald eagle feathers. *Id.*

Mr. Skeet filed the instant Motion to Compel Discovery on August 6, 2021. Doc. 19. He asks the Court to order the government to disclose certain records pursuant to the Equal Protection Clause of the Fifth Amendment to make out a selective enforcement claim. *Id.* at 1. Specifically, he requests the disclosure of:

1

1. A list of all cases brought by the United States Attorney under 16 U.S.C. § 668(a) and 16 U.S.C. §§ 703, 707 in the past 5 years.
    a. For such cases:
        i. The defendant's race or ethnicity.
        ii. Whether the defendant was an enrolled member or otherwise affiliated with a federally recognized tribe.
        iii. The name of the operation, investigation, or any case designations that involved the naming of the target or characterizing the mission (e.g. Operation Smudge Feather).
        iv. Whether the case involved undercover officers or confidential informants.
            1. The race, ethnicity, and tribal affiliation, if any, of any undercover officer or confidential informant.
            2. Whether any undercover officer or confidential informant disclosed their tribal affiliation to the target.
            3. Whether any undercover officer or confidential informant fictitiously reported having tribal membership or affiliation.
        v. Whether a purchase of prohibited parts was involved.
            1. Whether the purchase was purportedly for obtaining items of religious or spiritual significance.

2. A list of cases referred to the United States Attorney under 16. U.S.C. § 668(a) and 16 U.S.C. §§ 703, 707 that the United States Attorney declined to prosecute in the past 5 years.
    a. For such cases:
        i. The target's race or ethnicity.
        ii. Whether the target was an enrolled member or otherwise affiliated with a federally recognized tribe.
        iii. The name of the operation, investigation, or any case designations that involved the naming of the target or characterizing the mission (e.g. Operation Smudge Feather).
        iv. Whether the case involved undercover officers or confidential informants.
            1. The race, ethnicity, and tribal affiliation, if any, of any undercover officer or confidential informant.
            2. Whether any undercover officer or confidential informant disclosed their tribal affiliation to the target.
            3. Whether any undercover officer or confidential informant fictitiously reported having tribal membership or affiliation.
        v. Whether a purchase of prohibited parts was involved.
            1. Whether the purchase was purportedly for obtaining items of religious or spiritual significance.

3. Any documents or other information relating to tips, complaints, referrals, or any other requests by any person or entity to any federal agency to investigate a suspected violation of 16 U.S.C. § 668(a) and 16 U.S.C. §§ 703, 707 that was not pursued in the past 5 years.

*Id.* ¶¶ 7–11.

Mr. Skeet argues that the requested records are "critical in establishing a claim of race-based enforcement." *Id.* ¶ 12. In support of this motion, Mr. Skeet proffers evidence of the government's discriminatory intent and effect, arguing, here, that the two are "mingled." *Id.* ¶ 14. Mr. Skeet argues that the discriminatory effect of selective enforcement is to prohibit "selling items that are sacred to a discreet ethnic and religious minority." *Id.* He argues that discriminatory intent is established by the name of the U.S. Fish and Wildlife investigation: "Operation Smudge Feather." *Id.* Mr. Skeet reasons that because "smudging is embedded in Native American cultural heritage, identity, and modern worship," this moniker reveals a "plain intent . . . to boldly enter the arena of religious, cultural, and ethnic repression." *Id.* ¶ 15. He continues that the purported targeting of feather sales echoes the government's ignoble legacy of cultural genocide. *Id.* ¶ 16. Mr. Skeet argues that the Court must "pay special attention" because this purportedly selective enforcement restricts religious practice. *Id.* ¶¶ 17–21. Finally, he argues that his request would only impose a minor burden on the government, since it involves a small number of cases. *Id.* ¶ 23.

The government makes several arguments in response. *See* Doc. 22. First, the government asserts that Mr. Skeet fails to articulate a discriminatory effect because he does not provide "any meaningful statistical [or] anecdotal evidence, nor is he able to identify any other tribal member who sold protected bird feathers and then escaped prosecution because of the government's racial discrimination." *Id.* at 8, 18–22. Second, it asserts that Mr. Skeet failed to articulate a discriminatory intent because it alleges that the investigation of Mr. Skeet was sparked by complaints from the Navajo Nation Department of Fish and Wildlife and members of the Facebook page "All Things NAC (Native American Church)." *Id.* at 1–

2, 8. Moreover, the government proffers examples of cases prosecuted under Operation Smudge Feather, allegedly involving non-tribal members. *Id.* at 10, 17 (citing *United States v. Ruth Grande Olguin*, 20-CR-1428 SCY; *United States v. Amado Martin Vargas Hernandez*, 20-CR-1443 MV; *United States v. Joseph M. Chavez*, CVB docket citation number W0801123). Additionally, it argues that the name "Operation Smudge Feather" is not a conclusory admission of religious or racial animus, given the widespread appropriation and commodification of the practice of "smudging" by non-tribal members. *Id.* at 10–11.

Next, the government argues that Mr. Skeet's religious freedoms were not targeted because Mr. Skeet allegedly made admissions indicating "that he knew it was impermissible to sell feathers based on his own beliefs, tribal law, and federal law," but did so anyway for pecuniary gain. *Id.* at 3, 6, 8, 11–13. The government argues that it explicitly protects tribal members' right to possess, gift, and trade bird feathers for religious practice, only restricting tribal members' right to *sell* protected feathers. *Id.* at 12–13, 16. Thus, it argues that a more accurate view is that its enforcement actions serve "to protect tribal members' religious beliefs by conserving the populations of wild birds and reserving the feathers of those that are killed for exclusive use by tribal members use. . . ." *Id.* at 16. The government asserts that to characterize Mr. Skeet's sale of protected feathers as religious practice is to misunderstand and disrespect tribal religious practices, as well as to undermine the Navajo Nation's autonomy to aggressively manage natural resources. *Id.* at 11, 15.

In his reply, Mr. Skeet first argues that a complaint originating from within the Navajo Nation does not disprove that the government acted with racial or cultural animus. Doc. 24 ¶ 1. Next, he asserts that his religious beliefs are genuinely held and disputes the government's argument that Navajo law, which prohibits the sale of feathers, accurately

4

represents legitimate Navajo beliefs and cultural expression. *Id.* ¶ 4. Mr. Skeet also argues that if the government truly intended to protect eagles, it would prosecute wind farm installations, which account for "over a half million" bird deaths per year, rather than individuals like him. *Id.* ¶¶ 6–7. Additionally, Mr. Skeet notes that, of the three allegedly non-tribal defendants prosecuted pursuant to Operation Smudge Feather, one defendant was "a traditional Aztec dancer who grew up performing powwows since he was a small child in Mexico." *Id.* ¶ 11 (citing *United States v. Amado Martin Vargas Hernandez*, 20-CR-1443 MV [Doc. 20]). He also alleges, without citation, that another defendant "identifies as traditional Aztec." *Id.* (referring to but not citing *United States v. Ruth Grande Olguin*, 20-CR-1428 SCY). Next, Mr. Skeet argues that economic need does not cancel out his concurrent religious motivations, reasoning that the cost of religious goods or services does nothing to diminish their role in other religions. *Id.* ¶¶ 13–22. Finally, he concludes by arguing that discriminatory purpose is established by the government's alleged "laser focus on indigenous people and practices" and discriminatory effect is established by his allegation that Operation Smudge Feather "managed to ensnare only native people engaged in traditional practices despite there being literally millions of culprits of the unlawful killing, possession, and distribution of protected birds." *Id.* ¶ 25.

## STANDARD

The Fifth Amendment prohibits the discriminatory prosecution of criminal defendants. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Bolling v. Sharpe,* 347 U.S. 497, 500 (1954); *Oyler v. Boles,* 368 U.S. 448, 456 (1962)). Likewise, the discriminatory enforcement of a criminal law is prohibited when it amounts to "a practical denial" of equal protection of the law. *Id.* at 465 (citing *Yick Wo v. Hopkins,* 118 U.S. 356,

373 (1886)). Despite these strong protections, defendants must meet a "demanding" standard to obtain discovery on a discriminatory prosecution or enforcement claim. *Id.* at 463–64; *see also United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).

To make out a selective prosecution claim, a defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* "In light of *Armstrong*'s seemingly less stringent 'some evidence tending to show' standard, [a defendant] need not establish a prima facie case," but must only "make a credible showing" of discriminatory effect and purpose. *United States v. James*, 257 F.3d 1173, 1178 (10th Cir. 2001) (citing *Armstrong*, 517 U.S. at 468).[1] "The elements are essentially the same for a selective-enforcement claim." *Alcaraz-Arellano*, 441 F.3d at 1264 (emphasis omitted).

"To establish a discriminatory effect in a race case, the [defendant] must show that similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S. at 465. This is an "absolute requirement." *Id.* at 467. The Tenth Circuit has "recognized three possible methods of proving discriminatory effect in a selective-enforcement case: statistical evidence; the identification of a similarly situated individual who could have been, but was not, stopped or arrested; and, in certain circumstances, anecdotal evidence establishing an officer's pattern of similar discriminatory behavior." *United States v. Alabi*,

---

[1] Despite Mr. Skeet's suggestion that the Court must "pay special attention" because his motion implicates race and religion, the Court notes that strict scrutiny is not the appropriate standard for review here. *See, e.g.*, *United States v. Carolene Products Co.*, 304 U.S. 144, 153 (1938); Doc. 19 ¶¶ 17–21. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. As such, the burden lies with the defendant to establish the government's discriminatory actions, and the Court will apply the "'some evidence tending to show' standard" to evaluate whether Mr. Skeet has met his burden. *James*, 257 F.3d at 1178.

597 F. App'x 991, 996 (10th Cir. 2015).  If a defendant uses statistical evidence, the "proffered statistics must address the critical issue of whether that particular group was treated differently than a similarly-situated group." *James*, 257 F.3d at 1179.  Generally, statistical evidence in a "selective-enforcement case must include (1) reliable demographic information, (2) some manner of determining whether the data represents similarly situated individuals, and (3) information about the actual rate of occurrence of the suspected crime across relevant racial groups." *Alabi*, 597 F. App'x at 997.  Statistics are "unreliable as a matter of law" when they do not actually represent similarly situated groups or when they are not taken from an adequate sample size. *Id.* at 1179–80.  In identifying a similarly situated individual, a defendant "may not simply point out the similarities he shares with the other unprosecuted [individuals]." *United States v. DeChristopher*, 695 F.3d 1082, 1097 (10th Cir. 2012).  Rather, a defendant must show that the "circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.*

To establish discriminatory purpose, the defendant need not show that the discriminatory purpose was "the only purpose," but it "must be a motivating factor in the decision." *United States v. Hernandez-Chaparro*, 357 F. App'x 165, 166 (10th Cir. 2009).  "Discriminatory intent can be shown by either direct or circumstantial evidence." *Alcaraz-Arellano*, 441 F.3d at 1264.

## DISCUSSION

The Court finds that Mr. Skeet has failed to proffer sufficient evidence to establish discriminatory effect.  Specifically, the Court finds that Mr. Skeet has failed to proffer (1) statistical evidence showing discriminatory effect, (2) evidence that a similarly situated

individual could have been, but was not, arrested or prosecuted, or (3) anecdotal evidence establishing a particular officer's pattern of discriminatory behavior. *See Alabi*, 597 F. App'x at 996.

The Court considers in turn each piece of evidence that Mr. Skeet proffers for the discriminatory-effect prong of the inquiry. First, Mr. Skeet points to United States Sentencing Commission data showing that few cases are prosecuted under 16 U.S.C. § 668(a) and 16 U.S.C. §§ 703, 707. Doc. 19 ¶ 23. Yet as the government correctly points out, such data do not substantiate a discriminatory effect claim because they do not provide any basis for comparison with similarly situated individuals. Doc. 22 at 18; *see also Blackwell v. Strain*, 496 F. App'x 836, 840 (10th Cir. 2012); *United States v. Rodella*, 59 F. Supp. 3d 1331, 1353 (D.N.M. 2014). Indeed, Mr. Skeet provides no statistical evidence identifying which demographic groups are prosecuted under 16 U.S.C. § 668(a) and 16 U.S.C. §§ 703, 707. *See James*, 257 F.3d at 1179; *Alabi*, 597 F. App'x at 997.

Second, Mr. Skeet points to "wind farm installations," which were not prosecuted pursuant to Operation Smudge Feather despite allegedly causing "over a half million" bird deaths per year. Doc. 24 ¶¶ 6–7, 25. Mr. Skeet fails to establish whether there are identifiable individuals who would be liable for the bird deaths caused by wind farm installations. He also fails to address whether such individuals would be "similarly situated" to Mr. Skeet under 16 U.S.C. § 668(a) and 16 U.S.C. §§ 703, 707, since Mr. Skeet is accused not of killing birds, but of selling and offering to sell bird feathers. Nor has he shown that the "circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *DeChristopher*, 695 F.3d 1097. Yet the Court ultimately finds that this evidence is insufficient because Mr. Skeet has

failed to identify the race of these individuals, and the Court cannot disregard the "absolute requirement" to demonstrate "that similarly situated individuals *of a different race* were not prosecuted." *See Armstrong*, 517 U.S. at 465, 467 (emphasis added).

Next, Mr. Skeet argues that an undercover agent with the U.S. Fish and Wildlife Service posed as a member of the Pascua Yaqui Tribe, thus highlighting "the racial and religious aspects of this operation." Doc. 19 ¶¶ 1, 3, 19. The Court finds that this is insufficient to establish discriminatory effect because an isolated, albeit alarming, incident is inadequate to establish a pattern of discriminatory behavior. *See Alabi*, 597 F. App'x at 996.

Finally, Mr. Skeet argues that the discriminatory effect of selective enforcement is to prohibit "selling items that are sacred to a discreet ethnic and religious minority" and that that Operation Smudge Feather "managed to ensnare *only* native people engaged in traditional practices." Doc. 19 ¶¶ 14, 25 (emphasis added). The Court finds that these allegations are unavailing because they are unsupported by statistical evidence showing discriminatory effect, (2) evidence that a similarly situated individual could have been, but was not, arrested or prosecuted, or (3) anecdotal evidence establishing a particular officer's pattern of discriminatory behavior. *See Alabi*, 597 F. App'x at 996.

Finding that there is not discriminatory effect, the Court need not reach whether the government acted with discriminatory purpose.

## CONCLUSION

The Court is sympathetic to Mr. Skeet's point that the federal government has caused Native communities shocking and perhaps irreparable harm. Nevertheless, for the foregoing reasons, Mr. Skeet's Motion to Compel Discovery [Doc. 19] is hereby **DENIED**.

ENTERED this 12th day of October 2021.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Alejandro B. FernandezNovaline D. Wilson
*Attorney for Mr. Skeet**Assistant United States Attorney*